UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:21-cr-80026-AMC

UNITED STATES OF AMERICA

vs.

EMILIO SANTIAGO,

        Defendant.
_____/

FILED BY ___TM___ D.C.

Aug 6, 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and EMILIO SANTIAGO (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to Count One of the Indictment, which charges him with Conspiracy to Possess with Intent to Distribute, and Distribute, 400 Grams or more of Fentanyl, in violation of Title 21, United States Code, Sections 846, 841(a), and (b)(1)(A). This Office agrees to seek dismissal of the remaining counts of the Indictment after sentencing.

2. The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the

1

advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3. As to Count 1, the Court may impose a term of imprisonment of up to life, and must impose a term of imprisonment of at least ten (10) years, followed by a term of supervised release of at least five (5) years and up to life. In in addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $10,000,000.00.

4. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100.00 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If the defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

5. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses

committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

6. The Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1 of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. However, the Office will not be required to make these sentencing recommendations if the defendant: (1) fails or refuses to make full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the Office prior to entering this Agreement; or (3) commits any misconduct after entering into this Agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

7. The defendant and this Office agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed:

3

(a) If the elements of paragraph 6 relating to acceptance of responsibility are met, the government agrees to recommend a sentence at the low end of the guideline range as determined by the Court;

(b) The parties jointly recommend that the sentence in this case run concurrent to the sentence imposed in the supervised release violation in case number 9:10-cr-80098-RAR; and

(c) In exchange for the government's agreements in this plea agreement, the defendant and his counsel agree to ask the Court for a sentence of imprisonment that is not lower than 180 months.

8. The defendant is aware that Title 18, United States Code, Section 3742 and Title 28, United States Code, Section 1291 afford the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Sections 3742 and 1291 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291. However, if the United States appeals the defendant's sentence pursuant to Sections 3742(b) and 1291, the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that the defendant has discussed the appeal waiver set forth in this agreement with the defendant's attorney. The defendant further agrees, together with the United

4

States, to request that the Court enter a specific finding that the defendant's waiver of the defendant's right to appeal the sentence to be imposed in this case was knowing and voluntary.

9. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the Court. The defendant understands and acknowledges, as previously acknowledged in paragraph 2 above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

10. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

Date: 8/2/21          By: *Marton Gyires*
                          MARTON GYIRES
                          ASSISTANT UNITED STATES ATTORNEY

Date: 6/18/21         _____
                          JAMES A. SWETZ
                          ATTORNEY FOR DEFENDANT

Date: 6/3/21          _____
                          EMILIO SANTIAGO
                          DEFENDANT

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:21-cr-80026-AMC

UNITED STATES OF AMERICA

vs.

EMILIO SANTIAGO,

Defendant.
_____/

FILED BY ___TM___ D.C.

Aug 6, 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## STIPULATION OF FACTS AND ACKNOWLEDGMENT OF OFFENSE ELEMENTS IN SUPPORT OF GUILTY PLEA

The United States of America, by and through its undersigned Assistant United States Attorney, and EMILIO SANTIAGO, (hereinafter referred to as the "Defendant" or "SANTIAGO"), together with his counsel, admit that the government can prove the allegations contained in Count One of the Indictment, Conspiracy to Possess with Intent to Distribute, and Distribute, 400 Grams or more of Fentanyl, in violation of Title 21, United States Code, Sections 846, 841(a), and (b)(1)(A). The Defendant also stipulates that those allegations and the following recitation of the facts shall constitute the underlying factual basis. These facts are offered for the limited purpose of the guilty plea and consequently does not contain all of the facts known to the government in this case:

During the dates alleged in the Indictment, SANTIAGO was involved in the distribution of fentanyl in the Southern District of Florida.

On or about March 26, 2020, law enforcement received a travel alert from American Airlines that co-defendants Jose Esquer, Diego Navarro, Andrew Ruelas, and Manuel Topete were traveling to West Palm Beach, Florida from San Diego, California. At approximately 10:15 a.m., surveillance agents assisted by GPS location data from telephone number 760-670-1443, previously identified as being used by Esquer, located the four subjects sitting on a bench at the Walmart located at 4375 Belvedere Road, West Palm Beach, Florida. Surveillance agents visually confirmed the identities of two of the subjects as Esquer and Navarro. All four of the subjects were observed going into Walmart and going to the general area of the store containing packaging material. Security camera footage showed Esquer and Navarro purchasing packaging material. At approximately, 10:37 a.m., the four subjects were observed walking over to Nana's Diner located at 1230 N. Military Trail, West Palm Beach,

Florida. While they were outside Nanas Diner, Esquer was observed handing stacks of money to the other three individuals. All four individuals were observed individually handling and counting cash.

At approximately, 11:18 a.m., the four individuals were observed going back to the northwest corner of the Walmart parking lot. At approximately, 12:12 p.m., a silver Nissan Pathfinder arrived at the location and surveillance agents observed Emilio SANTIAGO exiting the driver side of the vehicle and meeting with the four subjects at the rear of the vehicle. SANTIAGO was observed opening the rear hatch of the vehicle, reaching inside, taking a tan color book bag from the spare tire compartment area of the vehicle, and handing it to Esquer. At that point, SANTIAGO left the area. Subsequently, all four remaining subjects walked to the north end of the parking lot toward trees bordering the northwest edge of the lot. In the vicinity of these trees, Navarro was observed putting on blue latex gloves and transferring the contents of the tan book bag into a manila envelope. Shortly thereafter, the group departed the parking lot northbound along Military Trail with Navarro discarding items, including blue latex gloves, as he walked.

The subjects then again stopped and loitered in front of Nana's Diner for several minutes. At approximately, 12:37 p.m., the four subjects were observed getting into a black Land Rover. At approximately, 12:48 p.m., the four subjects were observed arriving at the Downtown West Palm Beach Post Office located at 640 Clematis Street, West Palm Beach, Florida 33401. At that time, Esquer was observed entering the counter area of the Post Office and completing parcel mailing labels. At approximately 12:54, he departed the counter area and was observed meeting the other individuals outside the Post Office. At approximately, 12:58 p.m., Navarro was observed entering the counter area of the Post Office with two parcels. Navarro mailed the two packages which were retrieved by US Postal Inspectors. A federal search warrant was obtained and executed the same day as to the two mail parcels. The two packages contained a total of approximately one kilogram of a substance that field-tested positive for fentanyl.

On or about May 7, 2020, a Postal Inspector in California was conducting postal database checks and identified two parcels, as bearing characteristics common to other drugs parcels previously seized from the San Diego County Area, and referred the parcels to the Miami Division Postal Inspectors. One of the subject parcels was addressed to 117 Wisconsin St, Lake Worth, FL 33461 and the other to 516 N "B", Lake Worth, FL 33460. Location monitoring data from a federal tracking warrant that was active at the time on a cellular phone being used by Emilio SANTIAGO, showed that SANTIAGO's phone was in the vicinity of 117 Wisconsin Street, Lake Worth, Florida between approximately 10:47 a.m. and 6:45 p.m. on May 7, 2020. Location monitoring data from the same phone showed that it was in the vicinity of 516 North "B" Street, Lake Worth, Florida at approximately 10:16 a.m. on May 7, 2020. A federal search warrant was obtained to open the parcels, which were found to contain a total of approximately one kilogram of a substance that field-tested positive for fentanyl. The parcels were mailed from two separate post offices in San Diego County, California. Surveillance

video from the post offices in San Diego County showed that the person who mailed both packages has physical characteristics consistent with those of Jose Esquer.

On or about September 30, 2020, USPIS Postal Inspectors identified a parcel bearing characteristics common to drug parcels as having passed through the mail stream from San Diego, California to West Palm Beach, Florida. Federal agents established surveillance of the address at which the parcel was to be delivered. Agents observed Emilio SANTIAGO drive in his Chevrolet Impala through the neighborhood surrounding this address at approximately 12:05 p.m. SANTIAGO proceeded to canvass the neighborhood in a manner consistent with counter-surveillance measures for approximately one hour. At approximately 1:35 p.m., agents observed the suspected drug parcel dropped off at its destination address. At approximately 1:40 p.m., agents noted that the parcel was marked "delivered" in the USPS online system.

At approximately 2:15 p.m., agents observed a gray Cadillac SUV rental drive up to the package's destination address and honk its horn a number of times. Shortly thereafter, an unidentified female exited the destination address with a plastic bag through which agents could discern the shape of a box similar to the suspected drug parcel.

Agents at this time relayed their observations to local law enforcement partners who, with the assistance of police aviation units, located the gray Cadillac rental at the intersection of Summit Boulevard and Georgia Avenue in West Palm Beach, Florida. As local law enforcement vehicles approached, the driver of the Cadillac (later identified as SANTIAGO) ran a solid red light. Police aviation along with patrol units located the vehicle parked in the driveway of a residence, while SANTIAGO exited the car on foot. The aviation unit observed SANTIAGO as he approached the rear of the vehicle, opened the trunk, retrieved a bag, and then discarded the bag as he fled on foot. SANTIAGO was stopped and detained by patrol units approximately 100 yards from the vehicle. The abandoned bag was located and found to contain the drug parcel previously identified by USPIS postal inspectors. A state search warrant was obtained for the parcel and it was found to contain approximately one kilogram of a compressed hard white substance stamped with a symbol that looked like the one used by the company Audi. SANTIAGO was arrested by state authorities at the time.

I am aware of and understand the nature of the charges to which I am pleading guilty, because I have discussed the charges and what the prosecutor must prove to convict me with my attorney. I understand that the United States must prove the following facts (or "elements") of the offenses beyond a reasonable doubt:

Count 1: Title 21, United States Code, Section 846:

(1) two or more people in some way agreed to try to accomplish a shared and unlawful plan;

(2) the Defendant, knew the unlawful purpose of the plan and willfully joined in it; and

(3) the object of the unlawful plan was to possess with the intent to distribute or distribute 400 Grams or more of Fentanyl.

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

Date: 8/2/21    By: *Marton Gyires*
MARTON GYIRES
ASSISTANT UNITED STATES ATTORNEY

Date: 6/18/21
JAMES A. SWETZ
ATTORNEY FOR DEFENDANT

Date: 6/13/21
EMILIO SANTIAGO
DEFENDANT