```
1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
2                      WEST PALM BEACH DIVISION
                     CASE NO. 21-CR-80026-AMC-5
3

4    UNITED STATES OF AMERICA,          West Palm Beach, Florida

5                                       August 6, 2021
             vs.
6                                       1:10 p.m. - 1:40 p.m.

7    EMILIO SANTIAGO,

8               Defendant.              Pages 1 to 29

9    _____

10
             TRANSCRIPT OF SENTENCING - VIA VIDEOCONFERENCE
11            BEFORE THE HONORABLE BRUCE E. REINHART
                   UNITED STATES MAGISTRATE JUDGE
12
     APPEARANCES:
13

14
     FOR THE GOVERNMENT:           MARTIN GYIRES
15                                 ASSISTANT UNITED STATES ATTORNEY
                                   UNITED STATES ATTORNEY'S OFFICE
16                                 500 S. Australian Avenue
                                   Suite 400
17                                 West Palm Beach, Florida 33401

18   FOR THE DEFENDANT:           JAMES A. SWETZ
                                   LAW OFFICE OF JAMES A. SWETZ
19                                 2312 Wilton Drive
                                   Suite 23
20                                 Wilton Manors, Florida 33305

21   STENOGRAPHICALLY REPORTED BY:

22                                 ILONA LUPOWITZ, CRR, RPR, RMR
                                   Official Court Reporter to:
23                                 The Honorable Rodolfo A. Ruiz, II
                                   United States District Court
24                                 299 East Broward Boulevard
                                   Fort Lauderdale, Florida 3301
25                                 (305) 769-5568
```

```
 1                (Call to the Order of the Court.)

 2           THE COURT:  Good afternoon, everybody.  This is case

 3  number 21-80026, United States of America v. Emilio Santiago.

 4           Could I have counsel's appearances, please?  I'll start

 5  with counsel for the government.

 6           MR. GYIRES:  Good afternoon, Your Honor.  Martin Gyires

 7  for the United States.

 8           THE COURT:  Good afternoon Mr. Gyires.

 9           And on behalf of Mr. Santiago?

10           MR. SWETZ:  James Swetz on behalf of Mr. Santiago.

11           THE COURT:  I see we have some family members here.

12  I'm sorry it's under these circumstances, but I'm sure Mr.

13  Santiago appreciates it.

14           Good afternoon, Mr. Santiago.

15           THE DEFENDANT:  Good afternoon, Your Honor.

16           THE COURT:  Mr. Swetz, does Mr. Santiago consent to

17  appear this afternoon by videoconference?

18           MR. SWETZ:  I believe so, Your Honor.  We discussed it

19  prior to today.  I asked Mr. Santiago, if he does agree to

20  waive his personal appearance, to have this proceeding by way

21  of video.

22           THE COURT:  Okay.  And Mr. Santiago, is that okay with

23  you, that we do this by video rather than having you come to

24  the courtroom?

25           THE DEFENDANT:  Yes, Your Honor.
```

1           THE COURT:  Okay.  Thank you.

2           All right.  Mr. Santiago, if you'd be kind enough to

3    raise your right hand, sir.

4           (Defendant, EMILIO SANTIAGO, duly sworn.)

5           THE COURT:  You can put your hand down, sir.  Thank

6    you.

7           Mr. Santiago, you understand you've just taken an oath

8    to tell the truth, and if you were to intentionally make any

9    false statements during this hearing, you could be committing

10   the new crime of perjury, which is punishable by up to five

11   years in prison, in addition to any other sanctions you're

12   currently facing.

13          Do you understand?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  We're here today because I understand

16   you're considering changing your plea in this case from a plea

17   of not guilty to a plea of guilty.  Before you can do that

18   change of plea, I have to satisfy myself of a couple of things.

19          First, I have to satisfy myself that you're alert, and

20   awake, and thinking clearly today.

21          Second, that you know what your options are, that you

22   don't have to plead guilty.

23          And, third, that you know what rights you would be

24   giving up if you do plead guilty.

25          And, fourth, what are the consequences or potential

1    penalties you'd be facing if you do plead guilty.

2          And, also, I need to satisfy myself there's a good

3    factual basis for the plea because I cannot allow you to plead

4    guilty to something you did not do.

5          So do you understand that's why I'm going to ask you

6    all these questions here today?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Okay.  Can you tell me your full name?

9          THE DEFENDANT:  Emilio Santiago.

10         THE COURT:  And how old are you, Mr. Santiago?

11         THE WITNESS:  39.

12         THE COURT:  And how far did you go in school?

13         THE DEFENDANT:  GED.

14         THE COURT:  Okay.  Where was that?

15         THE DEFENDANT:  Mariana FCI.

16         THE COURT:  Okay.  Do you have any issues reading,

17    writing, or understanding English?

18         THE DEFENDANT:  No, sir.

19         THE COURT:  Are you a US citizen, sir?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  All right.  Have you ever been treated for

22    any mental illness or addiction to narcotic substances of any

23    kind?

24         THE DEFENDANT:  Narcotics.

25         THE COURT:  Okay.  What were you treated for?

1             THE DEFENDANT:  I did, like, drug treatment.

2             THE COURT:  Okay.  For which drug?

3             THE DEFENDANT:  For cocaine and marijuana.

4             THE COURT:  And when was that?

5             THE DEFENDANT:  Before I got arrested.

6             THE COURT:  Okay.  How recently were you receiving drug

7     treatment?

8             THE DEFENDANT:  About a year -- over a year ago.

9             THE COURT:  More than a year ago.  Okay.

10            Is there anything about the fact that you haven't had

11     any treatment in a year that is affecting your ability to

12     understand what's happening here today or to think clearly?

13            THE DEFENDANT:  No, sir.

14            THE COURT:  All right.  Are you now under the influence

15     of anything, drugs, alcohol, or other intoxicants, that affects

16     your ability to think clearly?

17            THE DEFENDANT:  No, sir.

18            THE COURT:  Have you taken any medicine of any kind, in

19     the last 24 hours, even if a doctor prescribed it for you?

20            THE DEFENDANT:  No, I haven't, sir.

21            THE COURT:  All right.  Well, as you sit here this

22     afternoon, do you feel like you're thinking clearly and you

23     fully understand what's happening?

24            THE DEFENDANT:  Yes, sir.

25            THE COURT:  I agree.  I can tell, from looking at you

1    and hearing from you, that you're thinking clearly and are

2    alert, so I'm going to let this proceeding go forward.  I find

3    you're competent to proceed.

4           Mr. Santiago, if you plead guilty in this case, I will

5    not be the judge who will sentence you.  That will be Eileen

6    Cannon.  Because the charge against you in this case could

7    involve more than a year in jail, you have the right to have

8    Judge Cannon ask you these questions and to conduct this

9    hearing.

10          Do you understand you have that right?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Have you had a chance to talk to Mr. Swetz,

13   your lawyer, about whether you want to agree to let me ask you

14   the questions here today rather than Judge Cannon?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Okay.  And has Mr. Swetz answered all your

17   questions about that?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Do you understand that, you know, I'm going

20   to more or less ask you the same questions that Judge Cannon

21   will ask you; I'm going to make the same findings that she is

22   going to make.  The only difference will be is that at the end

23   of the hearing, rather than me actually accepting your plea, I

24   will recommend that Judge Cannon accept your plea, and then

25   everything that happens after that will be the same.

1              Do you understand?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Okay.  And understanding all of that, and

4    having talked to Mr. Swetz about it, is it okay with you if I

5    go ahead and conduct this hearing today?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Mr. Gyires, any objection from the

8    government?

9              MR. GYIRES:  No, Your Honor.

10             THE COURT:  All right.  Thank you.

11             I find that Mr. Santiago's decision to consent to allow

12   me to conduct this hearing is a knowing and voluntary decision.

13             Mr. Santiago, have you had a chance to look at the

14   indictment, that is, the formal charge against you in this

15   case, and to discuss that charge and the case in general fully

16   with Mr. Swetz?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  Do you feel like you've had enough time to

19   think about the case and talk about it with Mr. Swetz?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  For example, did you and Mr. Swetz go over

22   what evidence the government might use if the government had to

23   proffer its case at trial?  Mr. Swetz might have called that

24   the discovery.  Did you have a chance to look at that?

25             THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Did you and Mr. Swetz talk about whether

2     there might be defenses to this charge?

3          Now, sometimes there just aren't, but did you at least

4     have a conversation and discuss whether you might have some

5     defenses?

6          THE DEFENDANT:  Yes.

7          THE COURT:  All right.  Did you talk to Mr. Swetz about

8     whether there might be arguments that the evidence that the

9     government wants to use against you was not obtained legally?

10    He might have talked about something called a motion to

11    suppress the evidence.

12         Did you talk about that?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  Has Mr. Swetz answered all of your

15    questions?

16         THE DEFENDANT:  Yes, he has, Your Honor.

17         THE COURT:  Are you satisfied that he's answered

18    everything that you need to know?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Has he done everything that you've asked

21    him to do in this case?  So you might have asked him to talk to

22    a witness or investigate something.

23         Has he done everything that you've asked him to do?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  Are you fully satisfied, then, with

1   Mr. Swetz and the advice and representation that he has given

2   you?

3            THE DEFENDANT:  Yes, I am, Your Honor.

4            THE COURT:  All right.  Very well.  I'm going to show

5   you, in a second, a five-page document -- let me put it up here

6   for you.

7            Can you see that document, Mr. Santiago?

8            THE DEFENDANT:  Yes.

9            THE COURT:  All right.  On the very last page, which is

10  what I am showing you right now, is your name typed out, and

11  then there's a signature above that.

12           Is that your signature?

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  Did you read each and every one of these 10

15  paragraphs before you signed your name to it?

16           THE DEFENDANT:  Yes, I have, Your Honor.

17           THE COURT:  And did you discuss each and every

18  paragraph fully with Mr. Swetz?

19           THE DEFENDANT:  Yes.

20           THE COURT:  And did he answer all of your questions

21  about this document?

22           THE DEFENDANT:  Yes.

23           THE COURT:  Do you feel like you understand what this

24  agreement says and what your obligations are under this

25  agreement?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  All right.  I'm going to go through some of

3     it with you anyway, Mr. Santiago, because I need to be

4     satisfied that you really understand it well.

5          So is it better for you if I show it to you as we talk

6     about it?

7          THE DEFENDANT:  It's all right if you don't, but...

8          THE COURT:  Is it more distracting to you to have it up

9     there or to not have it up there?

10          THE DEFENDANT:  It's not a problem, Your Honor.

11          THE COURT:  I'll leave it up just so we can stay with

12     each other.

13          THE DEFENDANT:  Okay.

14          THE COURT:  So it says under paragraph 1 that you,

15     under this deal, are going to plead guilty to a charge of

16     conspiracy to possess, with intent to distribute, and to

17     distribute 400 grams or more of Fentanyl.

18          So conspiracy is just a fancy way of saying you agreed

19     with someone else to do something illegal, and what you agreed

20     to do that was illegal was that you were going to possess,

21     amongst the conspirators, some Fentanyl, and also give that

22     Fentanyl to other people, and that you did it knowing it was

23     against the law.

24          Do you understand that's what the charge is that you're

25     going to plead guilty to?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  And it says here, in return for that plea,

3     the government is going to dismiss all other charges against

4     you.

5          Do you understand that?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  All right.  Now, the penalties for this

8     charge are listed in paragraphs 3 and 4.

9          What paragraph 3 says is that this charge carries a

10    mandatory minimum sentence of ten years in jail and up to life

11    imprisonment, followed by a term of supervised release of at

12    least five years, and up to life, and a fine of up to $10

13    million, if you could afford to pay a fine, and $100 in court

14    costs.

15         So do you understand that's the maximum penalty?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  And do you understand how supervised

18    release works is, if you're on supervised release and you

19    violate your conditions, you can be sent back to jail without

20    getting a new jury trial?

21         THE DEFENDANT:  Yes, I do, sir.

22         THE COURT:  Okay.  Have you been on supervised release

23    before?

24         THE DEFENDANT:  No, sir.  Just before this case, yes,

25    sir.

1          THE COURT:  Before this case, you have been.  You said

2   you had served time in Marianna.  That's why I asked if you had

3   been on supervised release before.

4          Now, these maximum penalties are important for a couple

5   of reasons.  First, because this charge is punishable by more

6   than a year, it's a felony, and having a felony conviction may

7   deprive you of valuable civil rights, such as the right to

8   vote, the right to hold public office, the right to serve on a

9   jury, and the right to possess a firearm.

10          So do you understand those rights are going to be

11   forfeited if you're convicted of a felony?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  And also, by pleading guilty to this

14   charge, you are taking the chance that Judge Cannon is going to

15   impose the maximum penalty, and as long as she does not exceed

16   the maximum penalty -- so, doesn't give you more than life in

17   prison, more than life in supervised release, over $10 million

18   in fine and court costs -- as long as she doesn't exceed that,

19   you don't get to take your plea back because you're unhappy

20   with your sentence.

21          Do you understand?

22          THE WITNESS:  Yes, sir.

23          THE COURT:  You may challenge your sentence for other

24   reasons, but you don't get to take your plea back.

25          Do you understand?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Now, this plea agreement also talks about

3    here, in paragraph 2, the federal sentencing guidelines.

4          Have you had a chance to talk to Mr. Swetz about how

5    the federal sentencing guidelines might apply in your case?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  And, so, do you understand that in a case

8    like this, the way the guidelines work is that you first

9    calculate a number for the crime itself, called the offense

10   level, and you separately calculate a number based upon your

11   criminal history, called a criminal history number.  Then you

12   take the offense level, and the criminal history level, and you

13   look at a chart, and that chart will recommend a term of months

14   as a sentence in this case.  And that range is advisory.  Judge

15   Cannon has to consider it, but doesn't have to follow it.

16         Do you understand that's essentially how the guidelines

17   are going to work?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  And what will happen is, if your plea is

20   accepted, the probation officer is going to prepare a

21   pre-sentence report.  You and Mr. Swetz will get a copy of that

22   report.  If you disagree with anything, you get to file

23   objections.

24         And, in particular, if you disagree with the way that

25   the probation office calculates the sentencing guidelines, you

1   can file an objection, and Judge Cannon will resolve that

2   objection at the time of your sentencing.

3        Do you understand?

4        THE DEFENDANT:  Yes, sir.

5        THE COURT:  Now, it's possible Judge Cannon's not going

6   to agree with you, that she's going to decide that the range is

7   different from the range that you think applies.

8        Do you understand, if that happens, and she applies a

9   different range from the range that you think should apply, you

10   may have other remedies, but you do not get to change your plea

11   back to a not guilty plea.

12        THE DEFENDANT:  Yes, sir.

13        THE COURT:  Now, in talking about the sentencing

14   guidelines, I notice in this agreement, down here in paragraph

15   7, there's some joint recommendations from you and the

16   government.  You're going to make some recommendations

17   together, to Judge Cannon, about how she ought to compute your

18   guidelines and what sentence she ought to impose, and, also,

19   that whatever sentence you receive in this case should run

20   concurrently to the sentence you're serving on the supervised

21   release violation.

22        So do you see and understand there are some joint

23   recommendations in this plea agreement?

24        THE DEFENDANT:  Yes, sir.

25        THE COURT:  Now, you understand Judge Cannon is not

1    required to follow those recommendations?

2         THE DEFENDANT:  Yes, Your Honor.

3         THE COURT:  And if for some reason Judge Cannon does

4    not follow those recommendations, you understand you don't get

5    to change your plea back to a not guilty plea?

6         THE DEFENDANT:  Yes.

7         THE COURT:  Sorry to keep asking you that same

8    question, but it's important.  I need to make sure you

9    understand those are the consequences of a guilty plea.

10         Okay.  Now, it also talks in the plea agreement, in

11    paragraph 6, about acceptance of responsibility, and that's a

12    way that you can get some points taken off of the offense

13    level.  And it says here that as long as you don't lie to the

14    probation office, haven't lied to the government to get them to

15    give you this plea agreement, and don't violate the law between

16    now and the day of sentencing, if you do those three things,

17    then the government will recommend that you get the maximum

18    number of points that you can get for acceptance of

19    responsibility.  It's probably going to be three, but, in some

20    cases it might just be two.

21         But do you understand that's what they have to do as

22    long as you do those three things?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  And, again, you understand that just

25    because they recommend those points doesn't mean Judge Cannon

1    has to give them to you.  And if Judge Cannon doesn't give them

2    to you, you don't get to change your plea back to a not guilty

3    plea.

4            THE DEFENDANT:  Yes.

5            THE COURT:  Okay.  Now, there is a provision here, in

6    paragraph 8, which is called an appeal waiver, and I need to go

7    over that with you in some detail.  Okay?

8            So, first of all, have you spoken to Mr. Swetz about

9    the appeal waiver in paragraph 8, and do you believe you

10   understand how it works?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  Has Mr. Swetz answered all your questions

13   about it?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  Okay.  Well, let me explain to you how I

16   think it works, and then we'll confirm how it works with the

17   government and with Mr. Swetz.

18           I mentioned earlier that if your plea is accepted --

19   well, scratch that.  Let me start that a different way.

20           Ordinarily, if you're charged with a crime, you go to

21   trial, and you're convicted and get sentenced, there are three

22   different things that you can appeal.  You can appeal the

23   conviction, so, you can say the jury got it wrong; I wasn't

24   guilty.  So you can appeal that.

25           Second, you can appeal how the Judge computes the

1    guidelines.  You can say Judge Cannon calculated the wrong

2    sentencing range, and you can appeal that.

3              And the third thing is, you can just appeal the

4    sentence overall, saying, my sentence was too long.  You can

5    appeal that.

6              So do you understand, generally, those are the three

7    things you can appeal?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  Now, if you plead guilty, you admit that

10   you did it, you can't appeal the conviction.

11             Do you understand?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  And what paragraph 8 says is, as long as

14   Judge Cannon sentences you within whatever guideline range she

15   calculates, you don't get to appeal either the calculation of

16   the guidelines or the sentence.

17             Do you understand?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  So, in other words, if you think the right

20   guideline range in this case is 121 to 151 months, and you file

21   an objection, and you argue that's what it should be, and Judge

22   Cannon says, no, it's not, it's 151 to 188 months, and then she

23   sentences you to 160 months, you can't appeal that.  You can't

24   appeal the fact that she computed the guidelines differently,

25   and you can't appeal the sentence.

1              Do you understand that?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  Now, if for some reason Judge Cannon gives

4    you a sentence above whatever range she calculates -- so she

5    calculates it to be 151 to 188 months, and she sentences you to

6    200 months, you can appeal that.

7              Do you understand?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  Or if for some reason the government

10   appeals your sentence, probably because it's lower than they

11   think it should be, if the government appeals your sentence,

12   all bets are off.  You can appeal both the calculation of the

13   guidelines and your sentence.

14             Do you understand that?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Mr. Gyires, have I accurately summarized

17   and explained the appeal waiver?

18             MR. GYIRES:  Yes, Your Honor.

19             THE COURT:  Mr. Swetz, have I accurately summarized and

20   explained the appeal waiver?

21             MR. SWETZ:  Yes, Your Honor.

22             THE COURT:  And Mr. Santiago, do you believe you fully

23   understand how this appeal waiver works?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  And understanding how it works, is it your

1    desire to go ahead and enter into that appeal waiver?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  All right.  I find that Mr. Santiago's

4    decision to waive his right to appeal, for these purposes we've

5    discussed, is a knowing and voluntary waiver, supported by the

6    advice of counsel, and I will accept the waiver.

7              Now, Mr. Santiago, the very last paragraph says, this

8    is the entire agreement between the parties, and there are no

9    other agreements, promises, representations or understandings.

10             Is that correct?  Does this written document contain

11   whatever deal you have with the government?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  Are there any other agreements, or

14   promises, that you are relying on in making your decision here

15   today that are not contained in this written document?

16             THE DEFENDANT:  No, Your Honor.

17             THE COURT:  Mr. Gyires, are there any other agreements,

18   representations, or promises, or understandings, that are not

19   listed in this written document?

20             MR. GYIRES:  No, Your Honor.

21             THE COURT:  Mr. Swetz, are there any other agreements,

22   promises, representations, or understandings, that are not

23   contained in this document?

24             MR. SWETZ:  No, Your Honor.

25             THE COURT:  Okay.  Mr. Santiago, has anyone threatened

1    you or tried to force you in any way to plead guilty?

2              THE DEFENDANT:  No, Your Honor.

3              THE COURT:  Are you pleading guilty because you are, in

4    fact, guilty of having conspired with other people to possess

5    with intent to distribute and to distribute Fentanyl?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Now, do you understand, parole has been

8    abolished, and so you will not be released early from jail on

9    parole?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  Now, it's possible that under the BOP

12   policies, or under our laws, that you might have the

13   opportunity to try and have early release from any sentence you

14   may receive.  You understand that your time of service of

15   sentence is not a part of this plea agreement.

16             So, in other words, if the Bureau of Prisons doesn't

17   release you when you think you should be released, you don't

18   get to undo this plea.

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Okay.  You may have other ways to fight

21   about that, but you don't get your plea back.

22             Do you understand that?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  All right.  Now, we've been talking a lot

25   about a plea, but you understand you have the right to continue

1   to plead not guilty -- hold on one second.  We're done with the

2   plea agreement.

3          You have the right to plead not guilty and to persist

4   in that plea, and if you persist in your not guilty plea, there

5   will be a trial in front of a jury.  At that trial, the jury

6   will be told that you are presumed to be innocent and that the

7   government has to prove the entire case beyond a reasonable

8   doubt, and you don't have to prove anything.

9          At the trial, you would have the right to the

10  assistance of counsel, a lawyer, at all stages.  If for some

11  reason Mr. Swetz could no longer continue to represent you, and

12  you couldn't afford to hire a different lawyer, the Court would

13  order a lawyer to represent you.  That's how important it is

14  for you to have a lawyer.

15         At a trial, the government would call witnesses, and

16  Mr. Swetz could cross-examine those witnesses, and you could

17  look them in the eye.  That's called confrontation,

18  cross-examination.

19         You also have the right to force people to come to

20  court, as your own witnesses, to help you.  That's called

21  compulsory process.  The Court would send out the marshals and

22  make them come to court to help you.

23         So do you understand those are all the rights you would

24  have if you had a trial?

25         THE DEFENDANT:  Yes, Your Honor.

1        THE COURT:  Do you also understand that because the

2   government has the burden of proving everything, and you don't

3   have to prove anything, or do anything at the trial, if you

4   chose not to do anything, or say anything, and remain silent at

5   your trial, the jury would be told that it could not hold your

6   silence against you.

7        Do you understand?

8        THE DEFENDANT:  Yes, Your Honor.

9        THE COURT:  On the other hand, it's your trial.  If you

10  want to testify, you want to tell the jury your side of the

11  story, that's your right as well, and no one could stop you.

12       Do you understand?

13       THE DEFENDANT:  Yes, Your Honor.

14       THE COURT:  Okay.  Now, maybe this is obvious, but if

15  you plead guilty, there won't be a trial, and all of these

16  rights we've just talked about are going to go away.  You're

17  not going to have confrontation, and compulsory process, and a

18  jury, and all of that.

19       Now, you will always have a lawyer, but, other than

20  that, do you understand the guilty plea waives all the other

21  rights that we've talked about?

22       THE DEFENDANT:  Yes, Your Honor.

23       THE COURT:  Okay.  Now, I already told -- we talked

24  about the charge that you're talking about pleading guilty to,

25  and I talked about the elements of the charge that the

1    government has to prove, that you willfully -- meaning, knowing

2    you were doing something illegal -- agreed with other people to

3    possess with intent to distribute Fentanyl and to distribute

4    Fentanyl.

5         Do you understand those are the elements the government

6    would have to prove at a trial?

7         THE DEFENDANT:  Yes, Your Honor.

8         THE COURT:  So you understand that by pleading guilty,

9    you're giving up your right to make the government prove it,

10   and you're admitting to each of those elements?

11        THE DEFENDANT:  Yes, Your Honor.

12        THE COURT:  And that means you're giving up any

13   defenses you might have.

14        So it might be a defense, for example, that you didn't

15   think it was drugs at all that you were distributing; you

16   thought it was sugar, or flour, or something else.  Or maybe

17   it's a defense of I didn't agree with anybody to do anything; I

18   just happened to be standing there.

19        So do you understand whatever defenses you might

20   otherwise have are waived, or given up, if you plead guilty?

21        THE DEFENDANT:  Yes, Your Honor.

22        THE COURT:  Also, we talked earlier very briefly about

23   a motion to suppress the evidence, that you could make the

24   argument that the government's evidence was illegally obtained.

25        Do you understand that if you plead guilty, you're

1    giving up your right to ever make that argument.

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  I have here another document, Mr. Santiago.

4    It's called a factual proffer.  They're a stipulation of facts

5    and acknowledgment of offense elements.  Let me show that to

6    you as well.

7              Can you see this document I'm scrolling through now,

8    Mr. Santiago?  I'm down on page 4.

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  Is that your signature?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  This document is three pages, roughly,

13   single spaced.

14             Did you go through this entire document, every

15   paragraph, with Mr. Swetz before you signed it?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  And it says in the document that you agree

18   that the facts that are laid out here are true, meaning, they

19   happened, and, also, that the government could have proved them

20   if we had a trial.

21             Do you understand that's what it means to have signed

22   this document?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  Okay.  And is that correct?

25             THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  So it's correct that what's contained in

2    this document, these facts are true, and the government could

3    have proved them if we had a trial?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Okay.  I'm going to ask Mr. Gyires right

6    now to go ahead and summarize.  He's not going to read the

7    entire thing.  I'm going to ask him to simply summarize the

8    basic facts of the case.  And I'd ask you to listen carefully,

9    Mr. Santiago, because when we're done, I'm going to ask you if

10   you disagree with any of the facts that Mr. Gyires has stated.

11         So Mr. Gyires, at this time, would you put the factual

12   basis in the record.

13         MR. GYIRES:  Yes, Your Honor.  I'll go ahead and

14   summarize what's in the document without reading each detail.

15         The government would have proven at trial that during

16   the dates alleged in the indictment, the defendant, Mr.

17   Santiago, was involved in the distribution of Fentanyl in the

18   Southern District of Florida.

19         As a couple of examples -- for example, on March 26,

20   2020, the defendant arrived at or near a Walmart parking lot in

21   Palm Beach County, in a vehicle.  In that vehicle, he had a bag

22   containing approximately one kilogram of Fentanyl, and he gave

23   that bag of Fentanyl, knowing that it was, in fact, a

24   controlled substance, to other individuals, co-defendants who

25   are listed on the indictment.

1          On or about September 30th, the defendant was observed,

2     via surveillance by law enforcement, attempting to and

3     successfully retrieving a parcel that had traveled through the

4     mail.  Surveillance followed him, as he was later in a vehicle.

5          The defendant stopped and got out of the vehicle, and

6     discarded the bag or box containing a controlled substance,

7     which, again, was approximately one kilogram of Fentanyl.

8     That's when he was arrested, but that was a state arrest.  But

9     ultimately, that case was brought into federal court as part of

10    this conspiracy.

11         THE COURT:  Thank you, Mr. Gyires.

12         MR. GYIRES:  That's the summary, yes.  That's all.

13         THE COURT:  I appreciate that.  Thank you very much.

14         Mr. Santiago, do you disagree with anything that

15    Mr. Gyires has said?

16         THE DEFENDANT:  No, Your Honor.

17         THE COURT:  Do you admit that you did the things that

18    he claims that you did?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  Okay.  I find that the facts set forth by

21    the government in the written proffer, as well as the oral

22    proffer, set forth the essential elements of the crime charged

23    here, in Count 1, and are sufficient to establish the crime of

24    conspiracy to violate Title 21, United States Code, Section

25    846.

1          Mr. Santiago, in a second I'm going to ask you to

2     formally change your plea, if that's what you want to do.  But

3     before I ask you that question, have you had enough time to

4     think about this decision?

5          THE DEFENDANT:  Yes, Your Honor, I have.

6          THE COURT:  Do you wish to speak with Mr. Swetz before

7     you make that decision?

8          THE DEFENDANT:  No, Your Honor.

9          THE COURT:  How do you now plead to the charge of

10    conspiracy to possess with intent to distribute and to

11    distribute Fentanyl, guilty or not guilty?

12         THE DEFENDANT:  Guilty, Your Honor.

13         THE COURT:  I find that Mr. Santiago is alert, and

14    intelligent, and is fully competent and capable of entering an

15    informed plea in this case, that he is aware of the nature of

16    the charges, and the consequences of his plea, and that his

17    plea of guilty is a knowing and voluntary plea supported by an

18    independent basis in fact containing each of the essential

19    elements of the offense.

20         I also find that he has freely, and voluntarily, and

21    intelligently, entered his plea of guilty here today, with no

22    promises other than those set forth in the plea agreement, and

23    no threats, and without any mental impediment of any kind.

24         In addition, I find he has had the advice and counsel

25    of competent lawyer with whom he says he is fully satisfied.  I

1    therefore recommend that Judge Cannon accept this plea and that

2    she adjudge Mr. Santiago guilty of Count 1 of the indictment.

3            I'll order the pre-sentence investigation to be

4    conducted and a pre-sentence report to be prepared pursuant to

5    Federal Rule of Criminal Procedure 32(c).

6            Mr. Santiago, at sentencing, you have the right to

7    speak.  Your attorney can speak.  You can have witnesses and

8    other family members speak on your behalf.  Judge Cannon will

9    set the sentencing in this matter by separate order.

10           Mr. Santiago is in custody.  He'll remain in custody

11   pending sentencing.

12           Mr. Swetz, is there anything else that we need to do

13   this afternoon?

14           MR. SWETZ:  No, Your Honor.

15           THE COURT:  Thank you.

16           Mr. Gyires, anything else we need to do?

17           MR. GYIRES:  No, Your Honor.  Thank you.

18           THE COURT:  Now, Mr. Santiago and family, I don't know

19   that I'm going to see you again before sentencing.  So, Mr.

20   Santiago, I wish you and your family the best of luck in the

21   future.

22           I'll excuse the parties in this matter.  We'll stand in

23   recess.

24           THE DEFENDANT:  Thank you, Your Honor.

25           (Court recessed at 1:40 p.m.)

```
 1                  C E R T I F I C A T E

 2

 3

           I hereby certify that the foregoing is an
 4
    accurate transcription of the proceedings in the
 5
    above-entitled matter.
 6

 7           This hearing occurred during the COVID-19 pandemic

 8  and is therefore subject to the technological limitations of

 9  reporting remotely.

10

11

12  DATE:  August 19, 2022      /s/Ilona Lupowitz
                                 ILONA LUPOWITZ, CRR, RPR, RMR
13                               Official Court Reporter
                                 United States District Court
14                               299 East Broward Boulevard
                                 Fort Lauderdale, Florida 33301
15                               (954) 769-5568

16

17

18

19

20

21

22

23

24

25
```